# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**BARBARA O'BOYLE,**
        **Plaintiff,**

v.                                                                       Case No. 16-C-1384

**GC SERVICES LIMITED PARTNERSHIP,**
        **Defendant.**

---

## DECISION AND ORDER

Barbara O'Boyle brings this putative class action against GC Services Limited Partnership alleging violations of the Fair Debt Collection Practices Act, which provides, in relevant part, that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. According to O'Boyle, GC, in an attempt to collect a credit card debt, sent her a letter indicating that it would assume the validity of the debt unless she disputed it in writing within 30 days. She argues that, although a debt collector can assume that a debt is valid if the debtor does not dispute it within 30 days after receiving written notice of the debt, the debtor need not dispute the debt *in writing*. *See* 15 U.S.C. § 1692g(a)(3). GC moves to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. O'Boyle moves to compel discovery.

### I. SUBJECT-MATTER JURISDICTION

GC moves to dismiss for lack of subject-matter jurisdiction arguing that O'Boyle lacks standing to sue because she has not alleged that she suffered a concrete injury. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). One limitation on federal jurisdiction, rooted in Article III

of the U.S. Constitution, is that a plaintiff must have standing to sue in order to "maintain a lawsuit in federal court." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546–47 (2016).

The first element of standing, and the only element at issue here, is that the plaintiff must have "suffered an injury in fact." *Id.* at 1547. "To establish injury in fact, a plaintiff must show that . . . she suffered 'an invasion of a legally protected interest' that is," among other things, "concrete." *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). A "concrete" injury is one that "actually exist[s]"—i.e., an injury that is "'real,' and not 'abstract'"—though an injury need not be "tangible" to be concrete. *Id.* at 1548–49 (quoting *Webster's Third New International Dictionary* 472 (1971)).

GC argues that O'Boyle has alleged a "bare procedural violation, divorced from any concrete harm," which is insufficient to satisfy the injury-in-fact requirement of standing. *See id.* at 1549 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *Lujan*, 504 U.S. at 572). A "procedural violation" occurs where a "person . . . has been accorded," but denied, "a procedural right," such as the right to "a hearing prior to denial of [a] license application." *See Lujan*, 504 U.S. at 572 & n.7. Ordinarily, a plaintiff has standing to sue "to enforce a procedural requirement the disregard of which could impair a separate concrete interest of [hers]." *Id.* at 572. "But deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers*, 555 U.S. at 496.

According to GC, O'Boyle's claims arise from its alleged violation of § 1692g(a), which requires a debt collector to provide a consumer with written notice of a debt in collection containing certain disclosures, including "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt,

2

or any portion thereof, the debt will be assumed to be valid by the debt collector." § 1692g(a)(3). GC argues that, even if, as alleged, it failed to provide an accurate version of this disclosure, O'Boyle does not seek to enforce the procedural requirement at issue—that is, she does not demand that she receive an accurate disclosure—and she does not allege any resulting harm to her concrete interests, so she lacks standing.

O'Boyle's claims as alleged undoubtedly arise from a procedural violation, but she alleges more than a *bare* procedural violation. Indeed, she alleges that, rather than simply failing to provide a disclosure required by the FDCPA, GC affirmatively, or at least impliedly, misrepresented her right to dispute a debt in collection other than in writing and thereby suggested an artificially high barrier to raising such a dispute. As she notes, the FDCPA expressly prohibits debt collectors from using "any false representation or deceptive means to collect or attempt to collect any debt." § 1692e(10). She argues that she "need not allege any *additional* harm" beyond that which the FDCPA proscribes. *See Spokeo*, 136 S. Ct. at 1549.

"In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* Misrepresentation (or "deceit") "has traditionally been regarded as providing a basis for a lawsuit in English or American courts," *id.*; *see, e.g.*, Restatement (First) of Torts §§ 525, 552 (1938), but common-law liability for misrepresentation required proof of harm caused by "justifiable reliance upon the misrepresentation," *see id.* § 525. In enacting the FDCPA, Congress identified the use of misrepresentation as an "abusive debt collection practice" and categorically barred its use by debt collectors. *See* 15 U.S.C. §§ 1692, 1692e. In other words, Congress identified the use of misrepresentation for debt collection purposes as

3

a concrete harm in itself and elevated it to "the status of [a] legally cognizable injur[y]." *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 578).

"Congress is well positioned to identify [and elevate] intangible harms that" are "concrete" and "*de facto*" but "that were previously inadequate in law," as it did in enacting the FDCPA. *Id.* (quoting *Lujan*, 504 U.S. at 578). As such, "its judgment is . . . instructive and important." *Id.* I see no reasonable basis for deviating from its judgment here, and GC does not provide one. Thus, because O'Boyle alleges a concrete injury identified and rendered actionable by Congress in the FDCPA, she has standing to sue. I will, therefore, deny GC's motion to dismiss for lack of subject-matter jurisdiction.

## II. FAILURE TO STATE A COGNIZABLE CLAIM

GC moves to dismiss for failure to state a claim upon which relief can be granted. GC argues that, even accepting the truth of O'Boyle's factual allegations, her complaint does not plausibly suggest that it violated the FDCPA by misrepresenting her right to dispute the validity of her debt. To the contrary, GC says, § 1692g(a)(3) impliedly requires that consumers dispute the validity of debts in writing, so its letter suggesting as much was accurate, not false, deceptive, or misleading.

Unlike § 1692g(a)(3), which permits a debt collector to assume the validity of a debt unless the consumer "disputes" it, other provisions of § 1692g expressly require that a consumer dispute a debt *in writing*. For example, § 1692g(a)(5) provides that, "upon the consumer's written request . . . , the debt collector will provide the consumer with the name and address of the original creditor." Similarly, § 1692g(b) states that "the debt collector shall cease collection of the debt" pending verification if "the consumer notifies the debt collector in writing . . . that the debt . . . is disputed."

Despite this difference in language, the Third Circuit, in *Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991), held that, "given the entire structure of section 1692g, subsection (a)(3) must be read to require that a dispute, to be effective, must be in writing." *Id.* at 112. According to the court, to read the statute otherwise

> would . . . create a situation in which, upon the debtor's non-written dispute, the debt collector would be without any statutory ground for assuming that the debt was valid, but nevertheless would not be required to verify the debt or to advise the debtor of the identity of the original creditor and would be permitted to continue debt collection efforts.

*Id.* The court would not "attribute to Congress an intent to create so incoherent a system." *Id.*

The Ninth Circuit, in *Camacho v. Bridgeport Financial Inc.*, 430 F.3d 1078 (9th Cir. 2005), disagreed: "The plain meaning of § 1692g is that debtors can trigger the rights under subsection (a)(3) by either an oral or written 'dispute,' while debtors can trigger the rights under [other] subsections . . . only through written dispute." *Id.* at 1081. The court concluded that the FDCPA simply "assigns lesser rights to debtors who orally dispute a debt" than to those who dispute one in writing. *Id.* at 1082. For instance, an oral dispute does not require that collection efforts cease, but it "precludes the debt collector from communicating the debtor's credit information to others without including the fact that the debt is in dispute." *Id.* (citing § 1692e(8)). As this result "is not absurd," the court was "not at liberty to insert any additional language" into the statute. *Id.*

Two other federal circuit courts of appeals have since agreed with the Ninth Circuit. The Second Circuit held that "§ 1692g(a)(3) does not incorporate the writing requirement included specifically in other sections of the same statute" and "giving effect to [this] difference creates a sensible bifurcated scheme." *Hooks v. Forman, Holt,*

5

*Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013). The Fourth Circuit, noting that some provisions of § 1692g "explicitly require written communication, whereas [§] 1692g(a)(3) plainly does not," declined to "read into [the statutory text] words that are not there." *Clark v. Absolute Collection Service, Inc.*, 741 F.3d 487, 490 (4th Cir. 2014).

The Seventh Circuit has not addressed whether a dispute under § 1692g(a)(3) must be in writing. But it recently noted, in a case concerning § 1692e(8)—an FDCPA provision that, like § 1692g(a)(3), applies where a debtor disputes a debt but does not expressly require that the dispute be in writing—that "the ordinary meaning of 'dispute'" is "to call into question or cast doubt upon," which does not require that "the debtor . . . put the dispute in writing." *Evans v. Portfolio Recovery Assocs., LLC*, No. 17-1773, 2018 WL 2035315, at *5, *6 n.6 (7th Cir. May 2, 2018) (quoting *Dispute*, Merriam–Webster Dictionary, http://www.merriam-webster.com/dictionary/dispute (last visited April 23, 2018)). This language suggests that the Seventh Circuit would agree with the Second, Fourth, and Ninth Circuits that a dispute under § 1692g(a)(3) need not be in writing.

The reasoning of the Second, Fourth, and Ninth Circuits is more persuasive than that of the Third Circuit, particularly in light of *Evans*. In general, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). Moreover, "it is generally presumed that Congress acts intentionally and purposely" when it "includes particular language in one section of a statute but omits it in another." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972) (per curiam)). Thus, I must presume that Congress meant what it said in the FDCPA when it referred to disputes "in writing" in some provisions but to

6

mere "disputes" in others and give effect to this difference in statutory language. As GC's motion to dismiss for failure to state a claim upon which relief can be granted depends on the Third Circuit's contrary reasoning, I will deny that motion.

### III. O'BOYLE'S MOTION TO COMPEL DISCOVERY

O'Boyle moves to compel responses to numerous interrogatories and requests for production to which GC objected for various reasons. O'Boyle seeks the names, mailing addresses, telephone numbers, and email addresses of 588 individuals in Wisconsin to whom GC sent a letter like the one she received. GC objects that it cannot comply with this request without violating the FDCPA, which forbids certain communications with third parties by debt collectors, 15 U.S.C. § 1692c(b), and prohibits "[t]he publication of a list of consumers who allegedly refuse to pay debts," *id.* § 1692d(3); *see also* 2 *Consumer Law Sales Practices and Credit Regulation* § 647, Westlaw (updated Sept. 2017) (discussing harassment by publication of debts). As O'Boyle notes, however, these provisions only bar communication and conduct "in connection with the collection of a debt." *See* §§ 1692c(b), 1692d. GC does not explain how responding to O'Boyle's discovery requests would constitute communication or conduct in connection with the collection of a debt,[1] so I will compel this discovery.

O'Boyle seeks the number and identities of and contact information for individuals in the United States to whom GC sent debt collection letters like the one that she received. GC objects that, to the extent this information is not duplicative, it is not relevant to any claim or defense asserted in this case, so it is beyond the scope of

---

[1] GC also argues that, even if the FDCPA permits disclosure of the names of and contact information for members of the putative class, that information is not relevant prior to class certification, but its argument is "[p]erfunctory," "undeveloped," and "unsupported by legal authority," so I will not consider it. *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017).

7

discovery. *See* Fed. R. Civ. P. 26(b)(1). I agree with GC. O'Boyle's alleged class consists of "natural persons in the State of Wisconsin." *See* Compl., ECF No. 1, ¶ 34. Unless she amends her class allegations, she may not obtain discovery regarding persons, natural or not, in any other state, as that information is not relevant to her claims. Thus, I will not compel discovery of such information at this time.

O'Boyle seeks the identities of all companies that provided GC with insurance coverage during the time period at issue here. GC objects that O'Boyle is not entitled to any more information than it has already provided her, which is that it had no insurance coverage applicable to her claims. In general, a party to federal litigation must disclose to all other parties "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv). O'Boyle does not argue that GC failed to make its required disclosures under Rule 26(a)(1), and she has not shown that she is otherwise entitled to discovery regarding GC's insurance providers. Thus, I will not compel any such discovery.

O'Boyle seeks the identities of GC's potential pretrial and trial lay and expert witnesses, the expected subjects of their testimony, and documents GC intends to use in its defense. GC objects that O'Boyle is not entitled to discovery of such information, the disclosure of which is governed by Rule 26(a). Rule 26(a) requires that each party initially disclose to the others "each individual likely to have discoverable information," as well as "all documents, electronically stored information, and tangible things," that the party "may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i), (ii). Rule 26(a) also provides for pretrial disclosure of expert witnesses, lay witnesses, and

8

documents or other exhibits that each party may call or offer at trial. Fed. R. Civ. P. 26(a)(2), (3). O'Boyle does not argue that GC has failed to make any required disclosures under Rule 26(a), and she has not shown that she is entitled to impose earlier disclosure deadlines under the guise of discovery requests. Thus, I will not compel discovery of information the disclosure of which is governed by Rule 26(a).

O'Boyle asks GC "whether information regarding [its] collection accounts is retrievable by computer and, if so," to identify "each field by which data is searchable or retrievable." *See* Blythin Decl. Ex. C, ECF No. 14-3, at 8. GC objects that the information sought is not relevant to any claim or defense asserted in this case. O'Boyle argues that her request is relevant to ascertainability of the alleged class. "Ascertainability" refers to a requirement imposed by some federal courts that a class action plaintiff "must demonstrate [that her] purported method for ascertaining class members is reliable and administratively feasible." *See Carrera v. Bayer Corp.*, 727 F.3d 300, 308 (3d Cir. 2013). As the Seventh Circuit has expressly rejected this "heightened ascertainability requirement," *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015), I will not compel discovery of information sought to satisfy it.

O'Boyle seeks a step-by-step description of the process by which GC generated and transmitted the debt collection letter that she received. She argues that this information is relevant because GC may assert a defense under 15 U.S.C. § 1692k(c), which provides that a debt collector is not liable for violating the FDCPA if it proves "that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." GC has not yet answered the complaint, so it has not pleaded any defenses. Until and unless it

pleads a § 1692k(c) "bona fide error" defense, information regarding such a defense is not relevant under Rule 26(b)(1). Thus, I will not compel this discovery at this time.

O'Boyle seeks "[a]ll documents relating to [her] alleged debt," "the collection thereof," and "the account(s) that [GC] was attempting to collect from [her]." *See* Blythin Decl. Ex. C, *supra*, at 12, 15. Yet, O'Boyle's claims, as alleged in her complaint, do not concern her debt, her account, or GC's attempts to collect from her apart from its use of the debt collection letter at issue, and GC has not yet pleaded any defenses, so I cannot discern how these documents are "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). O'Boyle's bald assertion that these documents are "plainly relevant" is insufficient. Thus, I will not compel this discovery at this time.

O'Boyle seeks "[a]ll documents relating to [GC's] activities to collect consumer debts" and "[a]ll form letters, enclosures, envelopes, memoranda, etc., used by [GC] in its debt collection activities." *See* Blythin Decl. Ex. C, *supra*, at 12. These requests are exceedingly broad and clearly call for production of documents and business materials of little or no arguable relevance to this litigation. GC correctly objected to these requests as seeking discovery that is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Thus, I will not compel this discovery.

O'Boyle seeks GC's training materials "regarding the FDCPA," *see* Blythin Decl. Ex. C, *supra*, at 12, arguing that such materials are relevant to GC's potential defense of bona fide error. The materials O'Boyle requests may be relevant to whether GC maintained "procedures reasonably adapted to avoid" unintentional FDCPA violations resulting from bona fide errors. *See* § 1692k(c). Again, though, GC has not yet pleaded

a bona fide error defense. Until and unless it does, discovery regarding such a defense is not relevant. Thus, I will not compel this discovery.

O'Boyle seeks all documents exchanged between GC and her alleged creditor about her debt or the collection of it. GC objects to this request as not proportional to the needs of the case and as seeking materials that are not relevant to any claim or defense. O'Boyle did not address GC's objections to this request in her reply brief in support of her motion to compel, which "implies concession." *See Midwest Generation EME, LLC v. Continuum Chem. Corp.*, 768 F. Supp. 2d 939, 950 (N.D. Ill. 2010). Thus, I will not compel this discovery.

O'Boyle seeks all documents concerning (1) GC's policies, practices, and procedures with respect to "the provisions of the FDCPA"; (2) "the adequacy of [GC's] policies, practices, and procedures [in] prevent[ing] violations of the FDCPA"; and (3) general "compliance with the FDCPA." *See* Blythin Decl. Ex. C, *supra*, at 13, 14. Documents concerning GC's policies, practices, procedures, and compliance with the FDCPA may be relevant if GC pleads a bona fide error defense, but even then, this case concerns only a handful of FDCPA provisions, so O'Boyle's requests are needlessly broad. As GC correctly objects to these requests as not proportional to the needs of the case, I will not compel this discovery.

O'Boyle seeks documents that GC submitted to or received from "governmental or law enforcement entit[ies] relating to the FDCPA or state collection laws or to [GC's] compliance therewith." *See id.* at 14. GC objects that these documents are not relevant to any claim or defense and that O'Boyle's requests are not proportional to the needs of

the case. As O'Boyle did not address these objections in her reply brief, which implies concession, I will not compel this discovery.

O'Boyle seeks documents concerning "any and all claims or complaints . . . that [GC] violated the FDCPA or similar state collection laws." *See id.* Again, though, GC raised objections to this request in its brief in opposition to O'Boyle's motion to compel that she did not address in her reply brief, which implies her concession to those objections. Thus, I will not compel this discovery.

O'Boyle seeks documents concerning "the specific language disputed in this case." *See id.* at 16. As is the case with some of O'Boyle's other discovery requests, the documents she seeks here may be relevant to a defense of bona fide error, should GC plead and assert such a defense, but they are not relevant to any of her claims. Thus, I will not compel this discovery at this time.

Finally, O'Boyle seeks all documents (1) "relating to any affirmative defense" or (2) "that [GC] may rely upon at trial or to support any dispositive motion." *See id.* As noted above, initial and pretrial disclosure of documents that a party "may use to support its . . . defenses," "expects to offer" at trial, or "may offer if the need arises" is governed by Rule 26(a). O'Boyle does not argue that GC has failed to make any required disclosures under Rule 26(a), and she has not shown that she is otherwise entitled to discovery in response to these requests, so I will not compel this discovery.

### IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the defendant's motions to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted (ECF No. 9) are **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to compel discovery (ECF No. 12) is **GRANTED in part** and **DENIED in part** as discussed above.

Dated at Milwaukee, Wisconsin, this 17th day of May, 2018.

s/Lynn Adelman_____
LYNN ADELMAN
District Judge